IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID F. LIBERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15 C 9666 |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

Plaintiff David Liberty (Liberty) brought the instant action against Defendant United States of America (Government) and included in its complaint a negligence claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). On January 19, 2017, a bench trial commenced to address the liability and damages issues in this case. The court has reviewed all admissible evidence in this case and enters the following findings of facts and conclusions of law:

## FINDINGS OF FACT

I. Negligence Claim

1. On January 8, 2015, Angel Torres (Torres) was driving a United States Postal Service (USPS) vehicle as an employee of the USPS. (Govt. Mot. Ex. A, 5).

1

2. On January 8, 2015, Torres worked out of the USPS office located at 909 W. Euclid Avenue in Arlington Heights, Illinois, and delivered the mail six days a week, and had the same delivery route for the past five years. (Govt. Mot. Ex. A, 5).

3. On January 8, 2015, snow was on the ground and the streets were slippery and icy. (Govt. Mot. Ex. A, 5).

4. On January 8, 2015, at approximately 9:00a.m., Liberty was riding his Miyata mountain bicycle southbound on Ridge Avenue in Arlington Heights. (Tr. 14, 17).

5. On January 8, 2015, at approximately 9:00a.m., Liberty was riding his bicycle in the middle of the residential street. (Tr. 17).

6. On January 8, 2015, at approximately 9:00a.m., Torres was operating the USPS truck westbound on Oakton Avenue. (Govt. Mot. Ex. A, 5).

7. On January 8, 2015, at approximately 9:00a.m., Torres approached the intersection of Oakton Avenue and Ridge Avenue. (Govt. Mot. Ex. A, 5).

8. On January 8, 2015, at approximately 9:00a.m., Torres slowed his vehicle, took a right turn onto Ridge Avenue, and traveled northbound on Ridge Avenue. (Govt. Mot. Ex. A, 5, 6).

9. Before Torres could completely turn his vehicle onto Ridge Avenue, he saw a bicyclist going south on Ridge Avenue. (Tr. 75).

10. Because of the snow, Torres was not driving very fast. (Govt. Mot. Ex. A, 7).

11. Liberty was operating his bicycle in the middle of Ridge Avenue, which was

against oncoming traffic. (Tr. 57-59).

12. Torres honked his horn approximately seven times in order to notify Liberty that he was getting close to the USPS truck. (Tr. 79).

13. Liberty continued traveling straight (towards the vehicle Torres was driving) and made contact in the center of the front of the USPS vehicle, which was not moving at the time of the collision. (Tr. 56, 80-81).

14. After colliding with the front of the USPS truck, Liberty went over his bicycle's handlebars then fell to the ground. (Tr. 20).

15. After the collision, Torres reported the incident to his superiors and police. (Tr. 86, 91).

16. Arlington Heights Police Officer David Fitzsimmons (Officer Fitzsimmons) responded to the incident at the intersection of Ridge Avenue and Oakton Street on January 8, 2015. (Tr. 98).

17. Arlington Heights Police Officer Brian McGuire (Officer McGuire) responded to the incident at the intersection of Ridge Avenue and Oakton Street on January 8, 2015. (Tr. 129).

18. Ross Elke (Elke), supervisor of customer service for USPS, was contacted by Torres after the collision and Elke drove to the location of the incident at the intersection of Ridge Avenue and Oakton Street on January 8, 2015. (Tr. 138-140).

II. Witness Credibility

The following witnesses testified at trial:

1. Plaintiff David Liberty

2. Angel Torres

3. Arlington Heights Police Officer David Fitzsimmons

4. Arlington Heights Police Officer Brian McGuire

5. Ross Elke

Liberty testified at trial. Liberty's responses to questions during his testimony were incomplete and evasive. When asked if he was seeking lost wages, first he stated that he was seeking lost wages for a couple of days. (Tr. 61). Later, Liberty stated he "was able to go to work two weeks later." (Tr. 61). It does not make sense why he would be seeking lost wages for two days only if he lost work time for two weeks due to the incident. In that regard, Liberty was also unable to provide documents to prove his employment status and income. (Tr. 61). Liberty also stated that his alleged back injury required six months of rest. (Tr. 25). However, evidence from Liberty's doctors did not reflect back injury and only included a recommendation that he stay off his feet for two weeks. (Tr. 45-46). Also, his testimony was at times inconsistent with the testimony of witnesses that the court found to be credible. For example, on direct examination, Liberty discussed what occurred immediately after the collision and the following testimony took place:

Q. Okay. Did the driver of the truck do anything after the collision?

A. Yes. He came out of the truck and said are you okay.

Q. And what, if anything, did you say?

> A. I said I don't know. I didn't say - - I'm hurt.
>
> Q. And was anything else said between the two of you?
>
> A. Nope.

(Tr. 20-21). Based upon the overall testimony of Liberty and his demeanor on the stand, the court finds Liberty's testimony not credible.

Torres also testified at trial. On direct examination, Torres described the incident as indicated in the finding of facts. Torres testified that immediately after the collision, he asked Liberty if he was okay and the following exchange occurred:

> Q. When you asked the plaintiff if he was okay, did he respond?
>
> A. He didn't respond as to the question that I asked him. He just told me to get away from him and look what I did to his bike and a couple of racial slurs and F-bombs and just kept saying get away, get away.
>
> Q. What specifically did he say? It's okay to say in court.
>
> A. He said get the f--- away from me, look what you did to my bike, f---ing idiot, you stupid Mexican. . . you should go back to your country and he just kept on. So I tried to distance myself from him but trying to assist him at the same time.

(Tr. 83-84).

Torres testified that Torres picked up the bike and Liberty threw it back on the ground and told Torres not to touch it and get away from him. (Tr. 84). Torres also testified that he contacted emergency responders immediately following the accident. (Tr. 86). Torres testified that he remained at the scene of the incident and cooperated

with the police investigation. (Tr. 82-86). Based upon the overall testimony of Torres, his experience and record as a USPS driver, and his demeanor on the stand, the court finds Torres' testimony credible.

Officer Fitzsimmons testified at trial. He stated that he responded to the incident on Ridge Avenue involving the USPS vehicle and Liberty. (Tr. 96). Officer Fitzsimmons testified that when he arrived at the scene, "[t]here was a postal truck and a postal carrier with his truck and he stated that the other party left the scene." (Tr. 98). Officer Fitzsimmons testified that the bicycle was off the roadway without a front tire but containing no other damages. (Tr. 99). Officer Fitzsimmons also testified that when he arrived at the scene, Liberty had left the location of the incident and did not remain at the scene. (Tr. 104). Officer Fitzsimmons testified that Torres remained at the scene of the incident and cooperated with the responding officers when they arrived at the scene. Based upon the overall testimony of Officer Fitzsimmons and his demeanor on the stand, the court finds Officer Fitzsimmons' testimony credible.

Officer McGuire testified at trial. He stated that he was the second responding officer to the incident on Ridge Avenue involving the USPS vehicle and Liberty. (Tr. 129). He testified that Liberty was not at the scene of the incident when Officer McGuire arrived. (Tr. 129, 131). Officer McGuire testified that he drove his vehicle to locate Liberty. (Tr. 130-131). Officer McGuire located Liberty three blocks from the incident walking down the street carrying a bicycle tire. (Tr. 131). Officer McGuire described his encounter with Liberty as follows: "I asked . . . David, were

6

you involved in a crash back at Oakton and Ridge and his answer to me was, yes, and you can go f--- yourself, Officer - - Mr. McGuire." (Tr. 131). Officer McGuire also testified that he asked, "David, are you hurt, do you need paramedics." (Tr. 131-132). Officer McGuire testified that Liberty responded, "[n]o; and I told you, you can go f--- yourself." (Tr. 132). In contrast, Liberty testified that when Officer McGuire asked if he was alright, Liberty stated "I'm on my way to the hospital." (Tr. 23). Based upon the overall testimony of Officer McGuire and his demeanor on the stand, the court finds Officer McGuire's testimony credible.

Elke also testified at trial. On direct examination, Elke testified that Torres contacted Elke and informed him of the incident. (Tr. 140). Elke traveled to the scene of the incident and Liberty was not there when Elke arrived. (Tr. 141). Based upon the overall testimony of Elke and his demeanor on the stand, the court finds Elke's testimony credible.

## CONCLUSIONS OF LAW

1. This court has jurisdiction under 28 U.S.C. § 1346(b), the FTCA. Under 28 U.S.C. § 1346, the "district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be

7

liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

2. Venue is proper under 28 U.S.C. § 1391(b) because all of the alleged acts and omissions forming the basis of this claim occurred in this judicial district.

3. Liberty has complied with 28 U.S.C. § 2675(a) of the FTCA by exhausting his administrative claims prior to filing this cause of action in the Northern District of Illinois.

4. Liberty's claim is governed by the substantive law of Illinois, because the FTCA incorporates the substantive law of the state where the alleged tortious act or omission occurred. 28 U.S.C. §§ 1346(b), 2647; *Augutis v. U.S.,* 732 F.3d 749, 752 (7th Cir. 2013).

5. To state a cause of action for negligence under Illinois law, "the plaintiff must establish that the defendant owed a duty of care, a breach of that duty, and an injury proximately caused by the breach." *Curatola v. Village of Niles,* 608 N.E.2d 882, 885 (Ill. 1993).

6. Under Illinois law, the "plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought." 735 ILCS § 5/2-1116(c). Also, the "plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any economic or

8

non-economic damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." *Id.*

7. In Illinois, "traffic laws apply to persons riding bicycles. . . and shall be subject to all of the duties applicable to the driver of a vehicle. . . ." 625 ILCS § 5/11-1502.

8. Under Illinois law, any "person operating a bicycle or motorized pedal cycle upon a roadway at less than the normal speed of traffic at the time and place and under the conditions then existing shall ride as close as practicable and safe to the right-hand curb or edge of the roadway except" in certain instances such as "[w]hen reasonably necessary to avoid conditions including, but not limited to, fixed or moving objects, parked or moving vehicles, bicycles, motorized pedal cycles, pedestrians, animals, surface hazards, or substandard width lanes that make it unsafe to continue along the right-hand curb or edge. . . ." 625 ILCS § 5/11-1505.

9. Liberty has shown by a preponderance of the evidence that the United States owes a duty of care to Liberty.

10. Liberty has not shown by a preponderance of the evidence that Torres was negligent in operating the USPS vehicle. To the contrary, the evidence shows Torres was operating the vehicle in a reasonable and safe manner.

11. Torres was operating the USPS vehicle at about two to three miles per hour before coming to a complete stop. Torres was driving slowly due to the road conditions. Torres saw Liberty when he was approximately twenty to thirty

9

yards in front of the USPS truck. Liberty was riding his bicycle down the middle of Ridge Avenue. Torres honked his horn multiple times in an attempt to warn Liberty that the USPS truck was directly in front of him. Torres testified that Liberty was operating his bicycle with his head down and failed to stop in time to avoid colliding with the truck. Liberty testified that he attempted to stop but was unable due to the surface of the street. Liberty's testimony provided the court with evidence that Liberty was not operating his bicycle with a reasonable standard of care. The evidence shows that Liberty was proceeding in the middle of the road with his head down and failed to keep a proper lookout to avoid running into the front of the USPS vehicle.

12. Liberty did not exercise a reasonable standard of care in keeping a proper lookout to avoid the collision. The evidence showed that Liberty was the sole proximate cause of his injuries.

13. Therefore, based on all of the evidence, the court finds in favor of the Government and concludes that Liberty failed to establish that the Government breached its duty of care towards Liberty or that it proximately caused his injuries.

## CONCLUSION

Based on the foregoing analysis, the court finds in favor of the Government on Liberty's negligence claim. The court directs the Clerk of Court to enter judgment in favor of the Government.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 27, 2017